IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | | |
|---|---|---|
| RUBBERMAID INCORPORATED, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 3:12-cv-00702 |
| | ) | |
| v. | ) | JURY TRIAL DEMANDED |
| | ) | |
| CENTREX PLASTICS, LLC, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## RUBBERMAID INCORPORATED'S
## REPLY CLAIM CONSTRUCTION BRIEF

## TABLE OF CONTENTS

|   |   | Page |
|---|---|---|
| I. | INTRODUCTION | 1 |
| II. | PROPER CONSTRUCTION OF DISPUTED TERMS IN U.S. PATENT NO. 6,079,339 | 2 |
|   | A. Panel | 2 |
|   | B. Terms Related to the Rubbermaid's Novel Rail Structure | 3 |
|   | C. Integrally Formed | 8 |
| III. | PROPER CONSTRUCTION OF DISPUTED TERMS IN U.S. PATENT NO. 6,178,896 | 9 |
|   | A. Outer wall | 9 |
|   | B. Circumscribing | 9 |
|   | C. Floor member | 10 |
|   | D. The floor member being disposed generally parallel relative to the panel | 11 |
|   | E. Wherein the socket is adapted to transmit stresses along the floor member | 11 |
| IV. | CONCLUSION | 12 |

# TABLE OF AUTHORITIES

**Page**

**CASES**

*MBO Labs., Inc. v. Becton, Dickinson & Co.*,
   474 F.3d 1323 (Fed. Cir. 2007) ............................................................................................... 1

*Novo Nordisk, Inc., v. Genentech, Inc.*,
   77 F.3d 1364 (Fed. Cir. 1996) ............................................................................................... 1

*Phillips v. AWH Corp.*,
   415 F.3d 1303 (Fed. Cir. 2005) ...................................................................................... passim

*SuperGuide Corp. v. DirecTV Enterprises, Inc.*,
   358 F.3d 870 (Fed. Cir. 2004) ................................................................................................ 7

*Vitronics Corp. v. Conceptronic, Inc.*,
   90 F.3d 1576, 1582 (Fed. Cir. 1996) ...................................................................................... 1

## I. INTRODUCTION

The Court should adopt the constructions proposed by Rubbermaid Inc. ("Rubbermaid") because Rubbermaid's proposed constructions most closely conform to the Federal Circuit's well-established claim construction principles.

Ignoring the patents at issue in this case—U.S. Patent No. 6,079,339 ("the '339 patent") and U.S. Patent No. 6,178,896 ("the '896 patent")—Centrex Plastics, LLC ("Centrex") stretches to create constructions that ignore and even contradict the intrinsic evidence of these patents. Such an approach is clearly not in keeping with the principles of claim construction. The Federal Circuit has repeatedly emphasized that the intrinsic evidence—such as the claims themselves, the patent specification and the prosecution history—is the most important consideration when construing a disputed claim term. *MBO Labs., Inc. v. Becton, Dickinson & Co.*, 474 F.3d 1323, 1329 (Fed. Cir. 2007); *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996). While it is the claims of a patent, rather than the specification, that measures the patent's right to exclude others, *Novo Nordisk, Inc., v. Genentech, Inc.*, 77 F.3d 1364, 1369 (Fed. Cir. 1996), the specification "is the single best guide to the meaning of a disputed term." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1315 (Fed. Cir. 2005) (en banc). Nowhere does Centrex cite to case law in support of relying on extrinsic evidence far removed from the claims—such as a patent not the patent-at-issue—, and ignoring the intrinsic evidence of the patents themselves.

The Court should adopt Rubbermaid's proposed constructions.

1

## II. PROPER CONSTRUCTION OF DISPUTED TERMS IN U.S. PATENT NO. 6,079,339

### A. Panel

| Term 1: panel | |
|---|---|
| **Rubbermaid's Proposed Construction** | **Centrex's Proposed Construction** |
| "a generally rectangular molded flat surface area having a longitudinal and transverse direction, and having a skirt along each of the longitudinal and transverse edges that extends downward from the flat surface" | "the generally flat, horizontal (when in use) portion of a shelf having top and bottom surfaces, the top surface of which is the surface on which items rest when placed on the shelf" |

Rubbermaid's proposed construction is pulled directly from the '339 patent specification itself, the "single best guide to the meaning of a disputed term." *Phillips*, 415 F.3d at 1315.

In contrast, Centrex's proposed construction ignores the patent specification and relies heavily on the specification of U.S. Patent No. 5,709,158 ("Wareheim"), a prior art patent. First, this approach is contrary to acceptable methodologies of claim construction. A patentee may be his own lexicographer, so not only does Wareheim not represent how the terms should be understood in context of the claims-at-issue, Wareheim is not necessarily indicative of how the terms would be understood in ordinary, everyday usage. Wareheim can only represent how Wareheim described "panels" in the context of the Wareheim claims. As those claims are not at issue here, the Wareheim patent specification is irrelevant. Second, even if Wareheim were to be considered, nothing in that reference suggests that no panel may have a skirt as described in the '339 patent. At most, the portion of the specification cited by Centrex demonstrates that there may be panels, unrelated to the '339 patent, that do not have skirts. This does not contradict Rubbermaid's construction.

2

Because the patent specification itself clearly defines the term "panel", it is not necessary to consider extrinsic sources. *See, e.g.*, *Phillips*, 415 F.3d at 1315. Rubbermaid's proposed construction for "panel" is entirely consistent with the intrinsic evidence and therefore should be adopted by the Court.

**B.  Terms Related to the Rubbermaid's Novel Rail Structure**

As explained in Rubbermaid's Opening Claim Construction Brief, (22), the '339 patent discloses a novel rail member structure, which addresses the problem of strain within the shelves in the prior art. Because the rail members are integral to the claimed invention, the Court must consider the '339 patent teachings in construing these terms. Centrex's attempt to divorce the meaning of these terms from the context of the patent, and Centrex's heavy reliance on such extrinsic evidence as unrelated patents, distorts the claimed invention.

As set forth below, Rubbermaid's proposed constructions for these terms are consistent with the '339 patent's teachings.

| Term 2: rail members | |
|---|---|
| **Rubbermaid's Proposed Construction** | **Centrex's Proposed Construction** |
| "molded plastic material forming beams on the underside of the panel, each beam having two spaced apart side walls extending downward from the panel along the length of the beam, each beam oriented along the panel in the same direction as the other beams" | "the term 'rail member' in the context of the claimed shelving system is synonymous with the term 'rib' or 'reinforcing rib,' which is any narrow rib like piece used to strengthen, reinforce, or stiffen a shelf. A 'rail member' is not a 'beam' having opposed side walls with a cross wall connecting the side walls to form a generally U-shaped channel" |

The '339 patent addresses a specific problem in the prior art—that of strain within the shelves when a load is placed upon them. (*See* '339 patent, col. 2, l. 55 -col. 3, l. 10.) As

3

explained in Rubbermaid's Opening Claim Construction Brief, Rubbermaid's proposed construction adopts the meaning of the term as described in the patent specification.

Contrary to Centrex's argument, Rubbermaid's proposed construction that the rail members are "…forming beams…each beam having two spaced apart side walls" is consistent with the '339 patent specification. (*See, e.g.*, *id*., Fig. 6; col. 4, ll. 51-53.) Figure 6 and the supporting description clearly show and describe two spaced apart walls forming the rail member. Centrex's argument to the contrary is incorrect and the '339 patent specification contradicts its position.

Centrex's reliance on dictionary definitions of the term "rib" is erroneous for at least two reasons. First, the term "rib" is not used in the claims-at-issue, so the dictionary definition for "rib" is irrelevant. Second, even if the term "rib" were relevant to the inquiry, reliance on dictionary definitions to contradict the '339 patent description of the term "rail members" undermines the fact that the claimed invention includes "a novel rail structure." (*Id*. at col. 2, ll. 63-65.) Any definition of claim terms related to this novel rail structure must consider the invention as claimed and described in '339 patent specification.

The specification clearly and specifically describes the rail members in the manner of Rubbermaid's construction, and the Court should adopt that construction.

| Term 3: lower portion | |
| --- | --- |
| **Rubbermaid's Proposed Construction** | **Centrex's Proposed Construction** |
| "the portion of each rail member interconnected with and extending downward away from the upper portion and having a terminating peripheral edge opposite from the upper portion" | "that part of the rail member that begins at and extends from the curvilinear lower edge surface where the rail member ends. The lower portion is situated physically below the upper portion of the rail member" |

4

As explained in Rubbermaid's Opening Claim Construction Brief, Rubbermaid's proposed construction is supported by the '339 patent specification. It is also more precise than Centrex's proposed construction. Centrex poses rhetorical questions—such as what does "opposite from the upper portion" mean—but does not offer any support for its claim that Rubbermaid's definition includes confusing terminology. A jury will understand the word "opposite" and Centrex fails to explain what is confusing about this and other words in Rubbermaid's proposed construction. Figures 4, 5, and 6 of the '339 patent as well as the rest of the specification clearly support Rubbermaid's position and thus the Court should adopt Rubbermaid's proposed construction.

| Term 4: curvilinear lower edge | |
|---|---|
| **Rubbermaid's Proposed Construction** | **Centrex's Proposed Construction** |
| "the terminating peripheral edge of the lower portion of each rail member defined in a curve that extends along the length of the rail member" | "the curved edge of the rail member, i.e., the curved edge surface where the rail member ends. The edge is situated physically below the upper portion of the rail member" |

The term "curvilinear lower edge" is also described in the patent specification, and is "the terminating peripheral edge of the lower portion of each rail member defined in a curve that extends along the length of the rail member" as Rubbermaid proposes.

Without support, Centrex appears to argue that the curve of the curvilinear lower edge does not extend along the length of the rail member. In support of this position, Centrex relies on a portion of the '339 patent specification that discusses the orientation the *rail structures*, not the curvilinear lower edge. Nothing in the specification suggests that the lower edge of the rail would somehow be oriented in a different direction than along the length of the rail member. To the contrary, as explained in Rubbermaid's Opening Claim Construction Brief, the specification

5

clearly envisions the curvilinear lower edge extending along the length of the rail member. (*See, e.g., id.*, col. 3, ll. 5-10.)

Thus, the proper construction of the term "curvilinear lower edge," consistent with the '339 patent's teachings, is "the terminating peripheral edge of the lower portion of each rail member defined in a curve that extends along the length of the rail member."

| Term 5: upper portion | |
|---|---|
| **Rubbermaid's Proposed Construction** | **Centrex's Proposed Construction** |
| "the portion of each rail member interconnected with and extending downward away from the panel and bounded on the opposite side from the panel by the lower portion of the rail member" | "the portion of the rail member which extends downward from where the rail member connects to the panel. It is situated physically above the lower portion of the rail" |

Again, the patent specification describes the upper portion of the rail member consistent with Rubbermaid's proposed construction. (*See, e.g.*, '339 patent, col. 2, ll. 19-21, 23-26; col. 5, ll. 19-28.) The term "upper portion" clearly indicates a relative location of the rail to the panel on one side and the "lower portion" on the other.

Centrex's proposed construction suggests the same meaning as Rubbermaid's, but is less clear and less specific. There is no reason to construe the term in a vague manner. The '339 patent specification explains that the upper portion is "bounded" by the panel and the lower portion of the rail member. (*Id.*, col. 2, ll. 19-26.) Therefore, the Court should adopt Rubbermaid's construction, which most clearly captures the disclosures in the '339 patent. (*See also, id.*, figs., 4, 5, and 6 and supporting description; col. 5, ll. 6-23, 24-45.)

6

| Term 7: vertex | |
|---|---|
| **Rubbermaid's Proposed Construction** | **Centrex's Proposed Construction** |
| "a single point in the curvilinear lower edge extending the furthest downward from the panel" | "the point where curvature is greatest. When the curvilinear lower edge of the rail member is parabolic in shape, the vertex is the point on the rail member's curvilinear lower edge where the parabola crosses its axis of symmetry" |

As with the other terms, Rubbermaid's proposed construction of "vertex" is supported by the '339 patent specification. This term is used throughout the patent specification to refer to the point in the curvilinear edge that extends furthest downward from the panel. (*See, e.g.*, '339 patent, col. 3, ll. 5-10; fig. 5 and supporting description.) As explained in Rubbermaid's Opening Claim Construction Brief, the everyday usage of the word "vertex" further supports Rubbermaid's definition. *See, e.g., SuperGuide Corp. v. DirecTV Enterprises, Inc.,* 358 F.3d 870, 874 (Fed. Cir. 2004) ("There is a 'heavy presumption' that the terms used in claims mean what they say and have the ordinary meaning that would be attributed to those words by persons skilled in the relevant art.")

Centrex again proposes a vague construction. This construction appears to be a further attempt by Centrex to suggest that the curvilinear edge may be in some orientation other than along the edge of the rail member. As explained above, there is no support for such a position. In an attempt to clarify its vague definition, Centrex proposes a second sentence to its construction that further confuses the construction. There is no reason to adopt a construction that must be further elaborated when Rubbermaid's proposed construction clearly construes the term while closely adhering to claim construction principles.

Because the '339 patent specification, as well as the term's plain meaning, support Rubbermaid's proposed construction for "vertex," it should be adopted by the Court.

### C. **Integrally Formed**

| Term 6: integrally formed | |
|---|---|
| **Rubbermaid's Proposed Construction** | **Centrex's Proposed Construction** |
| "continuous molded plastic material" | "made up of parts forming a whole shape" |

Claim 4 requires the panel and rail members be "integrally formed." In view of the '339 patent specification's teachings, this term means "continuous molded plastic material."

As Centrex notes, the '339 patent specification explains that, "[i]n fabricating molded plastic shelving, each panel is integrally formed with a plurality of sockets and rails." (Centrex's Responsive Claim Construction Brief, quoting the '339 patent, col. 8, ll. 21-23.) In other words, the panel and rail members are formed from one continuous piece of molded plastic material. Centrex attempts to argue that this sentence suggests that "integrally formed" is somehow something that cannot include "molded plastic." Yet, as this portion of the specification makes clear, "integrally formed" is a part of the fabrication of *molded plastic* shelving—thus, "molded plastic" is appropriately part of the definition. Nothing in that sentence suggests that "integrally formed," as used in a patent directed at molded plastic shelving, can have the broader meaning that Centrex urges. Construction of a claim term cannot happen in a vacuum. The actual invention must be considered. Any dictionary definition or other external evidence must be considered in light of the '339 patent. But Centrex's proposed constriction ignores the claimed invention to rely solely on a dictionary definition that is broader than the invention.

Rubbermaid's proposed construction is proper and should be adopted.

8

## III. PROPER CONSTRUCTION OF DISPUTED TERMS IN U.S. PATENT NO. 6,178,896

As with '339 patent, because Rubbermaid's proposed constructions for the '896 patent comport with the patent specification and the plain and ordinary meaning of the words themselves, the Court should adopt Rubbermaid's constructions.

### A. Outer wall

| Term 1: outer wall | |
|---|---|
| **Rubbermaid's Proposed Construction** | **Centrex's Proposed Construction** |
| "a boundary of material that surrounds and is distanced from the inner wall of the socket" | "an upright structure which serves to enclose the socket, and which is located external to the socket's inner wall and separate from any rail member" |

Rubbermaid's proposed construction is supported by the patent specification. (*See, e.g.*, '896 patent, col. 2, ll. 37-39; Fig. 3a, col. 6, ll.10-12; col. 8, ll. 5-14.) In contrast, Centrex's proposed construction impermissibly reads limitations into the claims. Nothing in the '339 patent specification requires that the outer wall have a specific orientation or be separate from any rail member.

Based on the '339 patent specification, the Court should adopt Rubbermaid's proposed construction and construe the term "outer wall" as "a boundary of material that surrounds and is distanced from the inner wall of the socket."

### B. Circumscribing

| Term 2: circumscribing | |
|---|---|
| **Rubbermaid's Proposed Construction** | **Centrex's Proposed Construction** |
| "surrounding or enclosing" | "to encircle or completely surround" |

9

Centrex correctly points out that the parties' definitions are not that far apart. However, without support, Centrex's construction reads in the limitation "completely" into the claim. Importing limitations without support is impermissible. Rubbermaid's proposed construction should be adopted.

### C. Floor member

| Term 3: floor member | |
|---|---|
| **Rubbermaid's Proposed Construction** | **Centrex's Proposed Construction** |
| "material within the socket that is disposed between and interconnects the inner and outer walls, and which is generally perpendicular to the inner and outer walls" | "a support surface surrounding each socket's inner wall below the panel's bottom surface at approximately the midpoint between the socket's upper edge and lower edge" |

As noted in Rubbermaid's Opening Claim Construction Brief, the '896 patent explains that the floor member is "disposed between the inner wall and the outer wall in a parallel orientation relative to the panel." ('896 patent, col. 2, ll. 42-44. *See also*, col. 3, ll. 13-22; col. 6, ll. 23-27; col. 8, ll. 5-14; fig. 3a and supporting description.) The panel is generally perpendicular to the inner and outer walls (*see* figs. 3a and 4), and thus the "floor member" is "material within the socket that is disposed between and interconnects the inner and outer walls, and which is generally perpendicular to the inner and outer walls."

Nothing in the specification requires that the floor be "a support surface surrounding…" as Centrex's proposed claim construction requires. Nor does the claim require that the floor member be located at a specific location. Again, it is improper to import a limitation from the specification. *See, e.g., Phillips*, 453 F.3d at 1323 (noting the Federal Circuit's rejection of "the contention that if a patent describes only a single embodiment, the claims of the patent must be construed as being limited to that embodiment.") This is both because "section 112 of the Patent

Act requires that the claims themselves set forth the limits of the patent grant" and "because persons of ordinary skill in the art rarely would confine their definitions of terms to the exact representations depicted in the embodiments." (*Id.*)

Rubbermaid's proposed construction of the term "floor member" is reasonable and consistent with the '896 patent's teachings and does not import limitations into the claims. Rubbermaid's construction should be adopted.

### D. The floor member being disposed generally parallel relative to the panel

| Term 4: the floor member being disposed generally parallel relative to the panel ||
|---|---|
| **Rubbermaid's Proposed Construction** | **Centrex's Proposed Construction** |
| "the floor member is oriented such that it extends in the same direction as the panel itself, and the planes of each of the floor member and the panel do not intersect at any angle and are equidistant at all points" | "requires that the floor member and the panel be parallel to each other, that is, that the floor member extends in a plane that at every point is the same distance from the plane of the panel, so that they never meet" |

Centrex's proposed construction relies in part on Centrex's construction of "floor" to mean "surface" and then Centrex's description of the term surface. This tortuous route of arriving at a construction of the phrase is unnecessary and improper. Rubbermaid's proposed construction is consistent with the plain and ordinary meaning of the phrase and thus the Court should adopt Rubbermaid's construction.

### E. Wherein the socket is adapted to transmit stresses along the floor member

| Term 5: wherein the socket is adapted to transmit stresses along the floor member ||
|---|---|
| **Rubbermaid's Proposed Construction** | **Centrex's Proposed Construction** |
| "the floor member transmits stresses that are realized within the socket" | "requires that the floor member support surface surrounding each socket's inner wall below the panel's bottom surface can communicate stresses between the socket's outer wall and inner wall" |

11

Rubbermaid's proposed construction for the final term is consistent with the meaning of the phrase on its face and nothing in the '896 patent suggests a contrary construction.

Centrex again proposes a construction that is needlessly wordy, is not supported by the patent specification, and imports limitations into the claims. Centrex's proposed construction appears to add a number of claim limitations that are not relevant to the phrase to be construed. These limitations are the same limitations that Centrex attempts to import into the construction of the term "floor members." There is no support for Centrex's construction. This phrase is straightforward and easily understood from the '896 patent specification. (*See, e.g.*, '896 patent, col. 3, ll. 13-24; col. 8, ll. 5-14; *see also* fig. 3a; col. 6, ll. 8-15, describing fig. 3a.) The specification and the plain and ordinary meaning support Rubbermaid's proposed construction of this phrase and the Court should adopt Rubbermaid's construction.

## IV. CONCLUSION

For the foregoing reasons, the Court should adopt Rubbermaid's proposed constructions.


Dated: August 8, 2013                                          Respectfully submitted,


                                                               */s/ Robert A. Muckenfuss*
                                                               Robert A. Muckenfuss (NC 28218)
                                                               MCGUIREWOODS LLP
                                                               201 North Tryon Street
                                                               Suite 3000
                                                               Charlotte, NC 28202
                                                               Telephone:   (704) 343-2000
                                                               Facsimile:   (704) 343-2300
                                                               rmuckenfuss@mcguirewoods.com
                                                               mpearson@mcguirewoods.com

Matthew B. Mock *(pro hac vice)*
SCHIFF HARDIN LLP
233 South Wacker Drive
Sears Tower Suite 6600
Chicago, Illinois 60606
Telephone: (312) 258-5513
Facsimile: (312) 258-5600
mmock@schiffhardin.com

Gina M. Bassi *(pro hac vice)*
SCHIFF HARDIN LLP
666 Fifth Avenue, Suite 1700
New York, NY 10103
Telephone: (212) 745-9545
Facsimile: (212) 745-5044
gbassi@schiffhardin.com

Alison L. Maddeford *(pro hac vice)*
SCHIFF HARDIN LLP
One Market, Spear Street Tower, 32nd Floor
San Francisco, CA 94105
Telephone: (415) 901-8774
Facsimile: (415) 901-9701
amaddeford@schiffhardin.com

*Counsel for Plaintiff Rubbermaid Incorporated*

**CERTIFICATE OF SERVICE**

I hereby certify that I have filed a copy of the foregoing using this Court's CM/ECF system, which will automatically send a copy via email to all counsel of record in this case, including:

| | |
|---|---|
| John F. Morrow, Jr.<br>Womble Carlyle Sandridge & Rice, LLP<br>One West Fourth Street<br>Winston-Salem, NC  27101<br>Phone: 336-721-3584<br>Fax:     336-733-8429<br>Email: jmorrow@wcsr.com | Russ Ferguson<br>WOMBLE CARLYLE SANDRIDGE & RICE, LLP<br>301 S. College Street<br>Charlotte, NC  28202<br>Phone: 704-331-4920<br>Fax:     704-338-7839<br>Email: rferguson@wcsr.com |
| Peter D. McDermott<br>(pro hac vice)<br>BANNER & WITCOFF, LTD.<br>28 State Street, Suite 1800<br>Boston, MA  02109<br>Phone: 617-720-9660<br>Fax:     617-720-9601<br>Email: pmcdermott@bannerwitcoff.com | Robert F. Altherr, Jr.<br>(pro hac vice)<br>BANNER & WITCOFF, LTD.<br>1100 13th Street, N.S., Suite 1200<br>Washington, DC  20005-4051<br>Phone: 202-824-3000<br>Fax:     202-824-3001<br>Email: raltherr@bannerwitcoff.com |

Dated:  August 8, 2013

                                                */s/ Robert A. Muckenfuss*
                                                Robert A. Muckenfuss (NC 28218)
                                                MCGUIREWOODS LLP
                                                201 North Tryon Street
                                                Suite 3000
                                                Charlotte, NC  28202
                                                Telephone:     (704) 343-2000
                                                Facsimile:     (704) 343-2300
                                                rmuckenfuss@mcguirewoods.com
                                                mpearson@mcguirewoods.com